*United States Bankruptcy Court*
*District of New Jersey*
*Clarkson S. Fisher Federal Building*
*United States Courthouse*
*402 East State Street*
*Trenton, New Jersey 08608*

*Hon. Kathryn C. Ferguson*                                                                           *(609) 858-9351*

## **LETTER OPINION**

June 6, 2023

Peter C Lucas, Esquire
Nicole Crismale, Esquire
Law Offices of Peter C. Lucas, LLC
725 Carol Avenue, PO Box 490
Oakhurst, NJ 07755
*Attorney for Plaintiff, Builders' General Supply Co.*

David Edelberg, Esquire
Scarinci & Hollenbeck LLC
150 Clove Road, 9th Floor
Little Falls, NJ 07424
*Attorney for Defendant, Alicia Marie Gallo*

                                      Re:      Alicia Marie Gallo
                                                        Case No. 20-24042.

                                                        Builders' General Supply Co. v. Alicia Marie Gallo
                                                        Adversary No. 21-1220

Dear Counsel:

       At the close of Builders' General's case, Debtor's counsel moved for a directed verdict and the court reserved decision. The following is the court's ruling on the motion for directed verdict.

Procedural history

The initial complaint sought a finding that the debt owed to Builders' General stemming from a settlement agreement was nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4). After a motion to dismiss, Builders' General was permitted to amend its complaint to plead fraud with more specificity and to include facts supporting the allegation of a fiduciary relationship. Builders' General filed an amended complaint in February 2022.[1] In April 2022, the court heard a motion and cross-motion to dismiss the Amended Complaint. The court granted the motion in part dismissing the § 523(a)(4) count but denied it as to the § 523(a)(2)(A) count. The parties subsequently filed a motion and cross-motion for summary judgment which were granted in part and denied in part. As a result of those motions, the sole issue remaining for trial was limited to whether Builders' General could establish a § 523(a)(2)(A) cause of action based on the Settlement Agreement.

Analysis

The Federal Rules do not specifically address a motion for a directed verdict in a bench trial, but Federal Rule of Civil Procedure 50 can be applied by extension. That rule provides that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may … resolve the issue against the party."[2] It has been noted that a "directed verdict is appropriate only if, after considering all the evidence and drawing all inferences therefrom in favor of the non-moving party, the court is convinced that no reasonable jury could find in favor of the non-movant."[3]

---

[1] Doc. 33
[2] Fed. R. Civ. P. 50(a)(1)(A)
[3] *Huss v. Gayden*, 571 F.3d 442, 456 (5th Cir. 2009)

Much like a summary judgment motion, when assessing a motion for a directed verdict the court must be mindful of where the burden of proof lies. As the party objecting to the dischargeability of its debt, Builders' General has the burden of proof[4] and must meet that burden by a preponderance of the evidence.[5] Additionally, because of the central role a "fresh start" plays in bankruptcy policy, any exception to discharge outlined in § 523(a) is construed strictly against the creditor and liberally in favor of the debtor.[6]

At the trial, Builders' General presented the testimony of its president Philip Shaheen, and then rested its case. Numerous times during his testimony Mr. Shaheen stated that he thought the only hope for Builders' General to get paid was by allowing Extreme Building Makeovers to complete its outstanding projects. Mr. Shaheen testified that to facilitate the completion of those projects, he allowed numerous Notices of Unpaid Balance ("NUB") to be removed. According to Mr. Shaheen, NUBs are a catastrophe for a contractor because homeowners do not want to work with a contractor that is not current with its suppliers. Finally, Mr. Shaheen testified that he did not think it was likely that Alicia Gallo would ever pay Builders' General $1.1 million.

Section 523(a)(2)(A) (a) provides that a discharge under section 727 does not discharge an individual debtor from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – (A) false pretenses, a false representation, or actual fraud …." Courts vary in the number of elements that must be proven, but those variations are more stylistic than substantive.[7] Courts typically require proof that the debtor: (1) obtained money, property or services by falsely representing or omitting a material present or past fact; (2)

---

[4] *In re Bayer*, 521 B.R. 491, 499 (Bankr. E.D. Pa. 2014); *Bankr. R.* 4005
[5] *Grogan v. Garner*, 498 U.S. 279, 291 (1991)
[6] *In re Cohn*, 54 F.3d 1108 (3d Cir. 1995)
[7] *Molz v. Price*, 613 B.R. 599, 603 n. 1 (Bankr. D.N.J. 2020) ("the number of elements appears to be merely organizational")

that the debtor knew at the time was false (or presented it with disregard for its truth); (3) the debtor intended that the plaintiff rely on that statement; (4) the plaintiff actually relied on that statement and the reliance was justified; and (5) the plaintiff sustained damages as the proximate result of the false representation.[8] If a creditor fails to prove even one of those elements then its cause of action fails.[9]

The first sub-part of the first element Builders' General must prove is that the debt at issue arose from money, property, or services obtained by Alicia Gallo. The Supreme Court has noted that "the statutory phrase 'obtained by' is an important limitation on the reach of … Section 523(a)(2)(A)."[10] From the evidence that was adduced at trial, Builders' General has not established that anything of value was "obtained by" Alicia Gallo as a result of entering into the Settlement Agreement.

It is undisputed that Extreme Building Makeovers, LLC owed approximately $1.1 million on its line of credit with Builders' General and that the unpaid balance was the subject of the Superior Court Action.[11] The Settlement Agreement and Mutual Release[12] and its related Order Entering Consent Judgement ("Settlement Agreement") set the amount owed to Builders' General at $1.1 million. The Settlement Agreement was essentially an agreement setting forth repayment terms. Because the Settlement Agreement did not result in any consequential

---

[8] *See e.g.*, *In re Schneider*, 2021 WL 6013539, at *11 (Bankr. D.N.J. Dec. 15, 2021); *In re Sevastakis*, 591 B.R. 197, 202 (Bankr. D.N.J. 2018)
[9] *In re Reynolds*, 193 B.R. 195, 200 (D.N.J. 1996) ("Creditors bear the burden of proof … and must prove each element of their claim by a preponderance of evidence")
[10] *Husky Int'l Elecs., Inc. v. Ritz,* 578 U.S. 356, 367 (2016)
[11] Amended Complaint, Ex. A [Doc 33]
[12] Plaintiff Ex. C

forgiveness of debt, it cannot be said that Alicia Gallo personally received any money, property or services as a result of entering into the Settlement Agreement.[13]

Even if the court takes into account the release of the NUBs, it cannot find that Alicia Gallo personally obtained anything of value. The Settlement Agreement provided that Builders' General would release certain liens on various homeowners; however, that was "in exchange for Extreme Building Makeovers, LLC and/or John Colatrella and Donna Colatrella promising to pay monies to Builders' General Supply from these jobs." Alicia Gallo in her individual capacity is not mentioned relative to the release of liens. Even if she were mentioned, Builders' General failed to introduce any evidence at trial establishing that any of the homeowners paid Extreme Building Makeovers or the Colatrellas as a result of those NUBs being released. As previously noted, for a debt to fall within the § 523(a)(2)(A) exception to discharge money, property, or services, or an extension, renewal or refinancing of credit "must *actually have been obtained by* false pretenses, representations, or fraud."[14]

The only value obtained as a result of the Settlement Agreement was for the benefit of John Colatrella. The Settlement Agreement provided that Builders' General would release special order materials "to John Colatrella for his use." Again, no materials were released to Alicia Gallo individually. The Settlement Agreement also provided that John Colatrella could apply for additional credit from Builders' General for up to $150,000. Once again, that was for John Colatrella individually and not Alicia Gallo.

The court finds that Builders' General has also failed to establish the second sub-part of the first element of a § 523(a)(2)(A) cause of action which requires a showing that any value

---

[13] At trial, Debtor's counsel presented the lack of money, property or services being obtained by Alicia Gallo as evidence of Builders' General's failure to prove the element of damages.
[14] *In re Adesanya*, 613 B.R. 808, 836 (Bankr. E.D. Pa. 2020) (emphasis added)

obtained was the result of the debtor falsely representing or omitting a material present or past fact. The fraudulent statement Builders' General purportedly relied on was the paragraph of the Settlement Agreement stating:

> Extreme Building Makeovers, LLC, John Colatrella, Donna Colatrella and Alicia Gallo f/k/a Alicia Colatrella agrees [sic] to make best efforts to make timely and regular payments to Builders' General Supply Company.

But that paragraph must be read in conjunction with another paragraph in the Settlement Agreement that stated that "Alicia Gallo f/k/a Alicia Colatrella has indicated she may file individual bankruptcy." It is impossible to reconcile those two provisions in a way that meets Builders' General's burden of establishing that Alicia Gallo made a false representation.

Another way to view that contradiction in the Settlement Agreement is that it undercuts the ability of Builders' General to meet its burden of establishing that it actually relied on a fraudulent statement and the reliance was justified. When the Supreme Court in *Field v Mans*, clarified that the standard to be applied in 523(a)(2)(A) actions was the subjective standard of justifiable reliance rather than an objective reasonable reliance test, it noted that this standard does not make reasonableness irrelevant because "the greater the distance between the reliance claimed and the limits of the reasonable, the greater the doubt about reliance in fact."[15]

It was established at trial that Alicia Gallo made no payments to Builders' General pursuant to the Settlement Agreement and did not request a payment plan. From those facts, Builders' General would have the court infer that Alicia Gallo fraudulently induced Builders' General into believing that she would be the party making payments. Even if the court were to make that inferential leap, there in nothing in the record to support a finding that Builders'

---

[15] *Field v. Mans*, 516 U.S. 59, 76 (1995)

6

General was actually relying on payments from Alicia Gallo (as opposed to Extreme Building Makeovers and the Colatrellas) and, if so, that such reliance was justifiable. Mr. Shaheen testified that he had no contact with Alicia Gallo at anytime during the negotiation of the Settlement Agreement. Mr. Shaheen confirmed on cross-examination that he never asked to see a personal tax return of Alicia Gallo nor did he request a personal Financial Statement from her. When asked why that was, he stated that his "deal was with Extreme." Mr. Shaheen testified that he understood that Alicia Gallo may file for personal bankruptcy. He stated that the possibility of Alicia Gallo filing for bankruptcy came up during the settlement conference and that he was aware that it was ultimately written into the Settlement Agreement. In light of that testimony, it is impossible to conclude that there was actual, much less justifiable, reliance on a promise by Alicia Gallo that she personally, as opposed to in her role as purported president of Extreme Building Makeovers, would repay the $1.1 million.

## Conclusion

In his closing, Builder General's counsel stated that Mr. Shaheen had been an honest and forthright witness who had acted honorably in his interactions with Extreme and the Colatrellas. The court agrees with that assessment and understands that Mr. Shaheen feels ill-used and harbors some righteous anger. All of those things can be true and yet not support a finding of nondischargeability. The exceptions to discharge are intentionally narrow and these facts do not support a cause of action under section 523(a)(2)(A). Debtor's counsel should submit an order in accordance with this opinion.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge